**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DAVID L. DOTSON, MEAGAN DOTSON, JERRY
GUM, DANA GUM, A ONE TOWING, JUAN ACOSTA,
DENISSE ACOSTA, MARIA ACOSTA,SCY-JHR JESUS
ACOTSA, DAVID ADAMS, JULIO ALBARADO, RON
and SHELLEY ALSBAUGH, FRANK AMADOR,
ANGEL ANAYA, DENNIS and JANET ANDERSON,
DUSTIN ARMIJO, HELENA ARMIJO, HONORABLE
CLAYTON ATWOOD (RET.), JOE DON AUTREY,
BABCOCK, ABIE and DELANEY BACA individually
and o.b.o. of their minor child A.B., DOREEN BACA,
ABIE BENAVIDES, DEWAYNE BEAGLES, PATRICIA
BEAGLES, VIRGIL BEAGLES, ANGEL BENAVIDEZ,
COONEY BENAVIDEZ, MARTH BENSON, JAMES
ARTHER BLANKENSHIP, J.R. BONESTEELL, LUCAS
BOWMAN, CHRIS BRAHS, CHRISTOPHER
BRANNAN, MATTHEW BRANNAN, BOB BRANNIN,
WILLIAM and DEETTA BRASWELL, HANNA BRAY,
WILLIAM BRAZFIELD, SUAN BREITHA, BRYCE
SANDOVAL, TODD BUDLONG, HENRY BURMANN,
AMY CALLAN, ALLISON CAMERON, DON
CAMERON, CLAYTON CANNON, JESSICA
CARRANZA, DAVID CARROL HONORABLE
FRANCIS CASES (RET.), DOUG CASH, DAYMON
CASTAGNETTO, TOBY LEONEL CHACON, JOHN
CHANEY, JAMES STUART CHAPMAN, ALEHANDRO
CHAVEZ, ALEX CHAVEZ, ANNA CHAVEZ, CARMEN
CHAVEZ, EVA CHAVEZ, KAROLYN CHAVEZ,
MICHELLE CHAVEZ, NADINE CHAVEZ, NANCY
CHAVEZ-BERG, TRINA CHAVIS, DEWEY
CHRISTIANSEN, NACONA CLINE, LARRY COLE,
MICHAEL COLLINS, FRANK COMBS, THOMAS A
COOK, BELULAH R. COOK, JIM COSTA, ALBERT
COSTALES, GINO COSTALES, B.W. COX, CROSS T.
CONSTRUCTION, KELLY CRUM, DAVID CRUZ, RAY
CUMBIE, DIAMON J, JOSEPH R. DAVILA LUCERITA
R. DAVILA, JIMMY DON DAVIS, KEVIN DAVIS, LEE
DELGADO, MARCOS DELGADO, JENNIFER
DICKERSON WILDA DILTS, JENNY RENIE
DOLEZAL, GAYL DOYL, GLEN DUGGINS, CALE
DURKIN, HOYT DUTTON, WADE ECKEL, TOM
EDWARDS, DANIEL ESQUIVEL, JOSE ESQUIVEL
MARIE FARR-LEE BEATRICE FERNANDEZ, LORI
FERNANDEZ, PAT FIERRO, STEPHANIE FINCH,

CHRISTOPHER FORD, SPENCER FOSS, EDWARD FRATELLO, MORGAN GACO, DELIA GARCIA, JENNIFER GARCIA, KENRIC GARCIA, PRISCILLA GARCIA, DAVID E. GAYTON JR. WILLIAM GEDDES, THOMAS GEORGE, GLENN GIBSON, BRIAN GIRON, RUSSELL GIRON, CEASAR GONZALES, DIANA GONZALES, MARY GONZALES, MELECIO GONZALES, ALONZO GONZALEZ, SHELBI GORET, FANCHER GOTESKY, MANNY GRADO, JOHN GRADY, DANNY GRAYSON, JIMMY GREEN, MICHELLE GREEN, SID GREEN, SHANNON DEVINE, LACY GREENHAGEN, SARAH GREENHAGEN, RAY GREENWOOD, BOB GREINER, RAYMOND GRIEGO, MELISSA TORRES, PETER HADDAD, JAIME HAGAN, CAREY HALL, KIMBERLY HAMADE, JAY HAMILTON, CRYSTAL THOMPSON, ELIZABETH HANDLEY, NICHOLAS HARDY, CAROL HARRIS, JAMES HARRIS, LAURA HARRIS, DALE and LINDA HENDERSON, TREG HERERRA, EDGAR HERNANDEZ, ROBERT HIGNIGHT, MIKE and SUSAN HITCHCOCK, RORY HOGAN and INEZ LEONTIV-HOGAN, GAUDALUPE HOKE, GEORGE HOOD, TRISTAN HOOD, DONNIE HUGHETT, GARRETT JACOBS, JOHN JACOBS, MICHAEL JACOBS, MANUEL JAQUEZ, RAYMOND JARAMILLO MARY JENKINS, RANDALL JENKINS, JOANN JOHNSON, PERRY JOHNSTON, STEVEN JOJOLA, CHAD JONES, KELLI MACK JONES, VANESSA JONES, WANITA JONES, WILTON JONES, MIKE KEENAN, TRACY KELLY, JACQUELINE KENNERLY, AARON KENT, ALISHA KETTLE, FRANK and CENAIDA KEY, DEEANN KIEHNE, LEE KIEHNE, KIERRA C. SHAUER, CHRIS KINNEY, FLORENCE WARD, CATHY KNOWLES, ASHLEY KUEHLENZ, CHRIS LABORIEL, JESS LANDERS, REGINA LANE, VERNON LANE, ANGELO LIEJA, LUCIANO LESPERANCE, SCOTT LEWIS, LARRY LEYBA, SANTIAGO LEYBA, BRYAN LIEBOWITZ, SHELLY LINDSAY, TODD LINDSAY, WYATT LINDSAY, LARRY GUITERREZ, LITTLE ANITAS, LOG STICK AND STEEL, DAVID LOPEZ, RICK LOPEZ, MIKE LOUGH, MONICA LUCERO, PATRICIA LUCERO, PRISCILLA LUCERO, REBECCA LUCERO, EDGAR LUJAN, SEAN LYNCH, ERNEST MALOUFF, CHARLES MANDEVILLE, MARC MCKINLEY, MARCELLA SANDOVAL, CYNTHIA MARTLOCK,

2

FRANKIE J. MASTERSON, MICHAEL MCDANIEL, WALTER and BARBARA MCCLAIN, JAMES VERNON MCLEMORE, VIRGINIA THERESA MCLEMORE, AARON MILLER, JAMES and THERESA MISHOE, SHANIA MISHOE, MJ CONCRETE, RAYNA MOLINERO, CLIFTON MONTGOMERY, DAVID and LILY MONTOYA, LESLIE MONTOYA, MARK MONTOYA, AURORITA MOORE, WILLIAM MOORE, GILBERT MORALES, LEON MOUNYO, ANDREW MUGGLESTONE, MARYELLA MUGGLESTONE, LAWRENCE SCHNEIDER, KEVIN LYNAUGH, JOY NELSON, CARI OBUCHON, DEENA OREILLY, RUSS ORR, WADE ORR, TANYA ORTEGA, MINDI ORUM, JOSEPH RICHARD PADILLA, GRETTA ANN PADILLA, ROBERT PADILLA, CHAD BUCKLAND, MARGARET SANCHEZ PATTERSON, JUSTIN PAYNE, CYNTHIA PEARSE, BERNICE PEREA, DENNY PETERSON, GERI PETERSON, MARY PHILLIPS, ALICIA M. PHILPITT, PRISCILLA PINO, VICTORIA PINO, ED PINSON, HERB PLUEMER, GREGORY PLUEMER, STEPHEN PLUEMER, LOUANNE CUNICO GALLEGOS, DYLAN PYLE, DENNIS PYLE, ALEXANDER RACCA RAELYNN RAEL ISAAC VALERIO, JAMES ARLEN REIDEL, MICHAEL RAQUEJO, ANNETTE RICHARDSON. DAVID RICKS IVONNE RILEY, JOHN RILEY, THERESA RIVERA, CLINTON ROBERTS, MICHELLE ROBERTS, SARAH ROBINSON, NOEL ROGERS, JAMES ROLSTON, ASHLEY ROMERO, GERARDO ROMERO, JEREMY ROMERO, MARIA ROMERO, MISTY ROMERO, STACIE ROMERO, CHRISTINA ROSADO, WILLIAM RUBI, CHRIS RUSSO, SALEM SAGER, CESAR SALAS, DALE SALAZAR, LEROY'S EXCAVATING, SONIA SALAZAR, JOEE SANCHEZ, RAUL SANDOVAL, SANTA RITA RANCHES POA, JOSEPH CATES, EMORY SEDILLO, ROBERT SERNA, MIKE SHERBRING, CRAIG SICHLER, JOHN SILVA, SHAYLA SILVA, ERIC SKRIVSETH, KEITH SLIGHT, KORY SLIGHT, DEREK SMITH, EVAN SMITH, FORREST SMITH, KENNETH SMITH, AUSTIN SMYTHE, AMANDA SMYTHE, SOCORRO DEVELOPMENT, SOCORRO PLASTICS, ERIC SOTELO, SPRING CANYON RANCH, DAVID STANDEFER, SEAN STANFORD, BOB STANLEY, HARLEY STEELE, HARLAN STEELE, TABITHA STONER, MATT STURGEON, T&T TRAILERS,

3

ELLIOT TAHER, TY-LYNN TAPIA, JJ'S PREMIER
TIRES AND SERVICE, TARA TAYLOR, JOHN
TEBBETTS, LANCE THIESSEN, CANDY TORRES,
DAVID TORRES, DEBRA TRUJILLO, JANE TURNER,
ELLA TWARY, SHAY UNDERWOOD, TINA
VALENZUELA, CELIA VALLEJOS, MICHAEL
VALLEJOS, JOSHUA VALLEJOS, VICTOR
VALLEJOS, NORMA MARIE VALLES, ERIC
VARGAS, JUAN PABLO VERGARA, EDUARDO
VEGARA, VICTORY AUTOMOTIVE JIM WALLACE,
AMANDA WELDY, JOSH WHITLOW, DAVE
WILGUESS, JC WILLIAMS, LONNIE WISDOM,
SAMANTHA WOODS, BRIAN ZAMARCHI, and IAN
ZASTROW,

    Plaintiffs,

  v.               Civ. No. 25-509 SCY/JHR

JOSEPH ACORD, individually, and JOHN DOE 1,
individually,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING QUALIFIED IMMUNITY

Plaintiffs Jerry and Dana Gum ("the Gums") assert that Defendant Joseph Acord (a New

Mexico Game and Fish Officer) illegally entered their property en route to knocking on their

front door to ask them questions about Plaintiff David Dotson, who Officer Acord wanted to

contact in connection with an investigation. More specifically, the Gums argue that Officer

Acord had no legal justification for passing the locked, gated fence surrounding their property as

a means to approach their front door. Drawing all reasonable factual inferences in the Gums'

favor, the Court finds that a jury could conclude Officer Acord violated the Gums' Fourth

Amendment rights when he entered their property. However, because clearly established law did

not exist at the time of the entry to place Officer Accord on notice that the alleged conduct would

4

violate the Gums' Fourth Amendment rights, Officer Accord is protected by qualified immunity.

Accordingly, the Court dismisses the Gums' claims against Officer Accord.

## STANDARD OF REVIEW

### I.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on

each side so that a rational trier of fact could resolve the issue either way," and it is material "if

under the substantive law it is essential to the proper disposition of the claim." *Becker v.

Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing

a motion for summary judgment, the Court views the evidence and all reasonable inferences

therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d

1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking

summary judgment has the burden of showing that there is no genuine dispute as to any material

fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the

moving party meets its burden, the non-moving party must show that genuine issues remain for

trial. *Id.*

### II.    Qualified Immunity

Qualified immunity protects public officials from liability "insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.

Fitzgerald*, 457 U.S. 800, 818 (1982)). When an individual defendant raises the qualified

immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The plaintiff must show that 1) the officer violated a constitutional or statutory right and 2) the right was clearly established when the alleged violation occurred. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). A court may address these prongs in either order, *Pearson*, 555 U.S. at 236, but a plaintiff must satisfy both to avoid qualified immunity, *Olsen*, 312 F.3d at 1304.

In determining whether an officer is entitled to qualified immunity, the relevant question is not whether the officer made a mistake or whether, in retrospect, the officer should have acted differently. "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful— should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Instead, the relevant inquiry is whether an officer had clear notice that the specific conduct in which the officer engaged was illegal.

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. The action at issue need not have been previously declared unlawful, but its unlawfulness must be evident in light of preexisting law. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). Except for egregious circumstances in which every reasonable officer would understand the conduct at issue to be unreasonable, unlawfulness is generally demonstrated "when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law." *Id.* at 1069-70 (internal quotation

6

marks omitted). "A prior case need not have identical facts," *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017), but the precedent must make it clear "to every reasonable officer . . . that what he is doing violates that right," *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). The plaintiff bears the burden of identifying "a controlling case or robust consensus of cases" where an officer acting "under similar circumstances" to those faced by the defendants was found to have acted unlawfully. *D.C. v. Wesby*, 538 U.S. 48, 65 (2018); *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015). Furthermore, the cases so cited must clearly establish that "the scope of the right encompasses the facts presented." *Quinn*, 780 F.3d at 1012 (internal quotation marks omitted; emphasis removed). "[T]he defense of qualified immunity gives public officials the benefit of legal doubts." *Donovan v. City of Milwaukee*, 17 F.3d 944, 951 (7th Cir. 1994) (internal quotation marks omitted). Thus, qualified immunity provides "ample room for mistaken judgments . . . ." *Malley v. Briggs*, 475 U.S. 335, 314, 343 (1986).

## UNDISPUTED MATERIAL FACTS

The parties dispute how Officer Acord entered the Gums' property and whether the locked fence that surrounded the Gums' property had a gap in it that Officer Acord could have squeezed through. Otherwise, the facts are not in dispute. Indeed, Officer Acord's approach to the Gums' front door after passing the gate, his interaction with the Gums while at the front door, and his departure from the Gums' front door are captured on video.

The undisputed facts are as follows. *See* Doc. 42 at 12-14; Doc. 47 at 9-10. Shortly before 7:00 p.m. on January 11, 2025, Officer Joseph Acord and Officer Jake Morales arrived in San Acacia, NM for the purpose of attempting to speak with David Dotson about an investigation into the killing of an oryx that occurred earlier that day. Undisputed Material Fact ("UMF") 1. At that time, it was already dark. Def's Exhs. B and C. Officer Acord had an address for Mr.

7

Dotson, but the house belonging to that address was difficult to locate. UMF 2. Officer Acord

believed that the Gums' property might have been where Mr. Dotson could be located. UMF 2.

Officer Acord approached the Gums' residence, which was surrounded by a fence with a gate.

UMF 3.[1] After going past the gate, Officer Acord approached the front door of the Gums' house

and immediately rang the doorbell. UMF 4. Mr. Gum opened his door to speak with the Officers

at 7:02 p.m. UMF 5. Officer Acord and Mr. Gum had a conversation that lasted approximately

one minute. UMF 6. Officer Acord asked if Mr. Gum was Mr. Dotson, and Mr. Gum replied that

he was not. UMF 6. Officer Acord asked if Mr. Gum knew Mr. Dotson, and Mr. Gum replied, "I

do." UMF 6. Officer Acord asked if he knew where Mr. Dotson lived, and Mr. Gum indicated

that he did not think David Dotson was home right now, but pointed to a structure on the

neighboring property and said, "See that big – there's a big barn-dominum thing over there – he

lives in that." UMF 6. Mr. Gum indicated that he was trying to read Office Acord's uniform to

see who he was, at which point Officer Acord asserted that he was with New Mexico Game and

Fish. UMF 6. Officer Morales asked Mr. Gum if he knew whether Mr. Dotson lived anywhere

else or had any other property. UMF 6. Mr. Gum replied that he did not know but that he thought

---

[1] The Gums purport to deny UMFs 1, 2, and 3 because they "lack sufficient information to either admit or deny due to the fact that Defendants are thwarting discovery." Doc. 47 at 9. A lack of discovery may be a basis to file a request under Federal Rule of Civil Procedure 56(d), but it does not comply with the requirement to cite record support for a factual dispute. D.N.M.LR-Civ. 56.1(b). The Gums did not file any requests to delay briefing of this motion under Federal Rule 56(d). Nor did the Gums present evidence contradicting the evidence Officer Acord presented in support of UMFs 1-2 (background information not material to the current motion). Regarding UMF 3, the Gums do not challenge Officer Acord's assertion in UMF 3 that the Gums' residence was surrounded by a fence which had a gate. Instead, as set forth more fully below, they challenge Officer Acord's assertion in UMF 3 that, "The gate was partially ajar, and Officer Acord and Officer Morales were able to move the gate aside enough to enter the property and approach the front door . . . ." Doc. 42 at 12. The Court will address this challenge to the extent it is based on Mr. Gum's affidavit. To the extent the Gums challenge Officer Acord's asserted facts based on a lack of discovery, however, the Court finds they have waived that challenge.

Mr. Dotson was currently in Los Lunas. UMF 6. Officer Acord thanked Mr. Gum for the information, and then he and Officer Morales turned to begin exiting the property. UMF 6.

As the officers were leaving, Mr. Gum asked how they had gotten onto the property and pointed to a gate on the fence line at the front of his property. UMF 7. Officer Acord answered that they had squeezed through a small gap in the gate. UMF 7. The officers proceeded again to exit the property the way they had entered it, and Officer Acord ended his body cam recording at 7:03 p.m., prior to exiting the property. UMF 7.

The officers were present on the property for a total of less than 3 minutes, were polite, and there was no aggression. UMF 7. The officers did not re-enter the Gums' property on January 11, 2026, or at any other time. UMF 8. The officers did not employ the use of drug-sniffing dogs or any other equipment that would allow them to observe anything beyond what could be seen in plain view. UMF 9. The officers did not seize any property in the time spent on the curtilage of the Gums' property. UMF 10.

In their response, the Gums assert three statements of undisputed material facts, two of which Officer Acord does not challenge with contradictory evidence. Doc. 47 at 10; Doc. 52 at 4-6. First, the Gums assert that, "The Gums had to let Officer Acord and Morales out of their property by opening the gate." Doc. 47 at 10 (the Gums' additional material fact, hereinafter referred to as PAF 2). Second, the Gums assert that, "The lapel videos do not capture Officer Acord and Morales' entry into my fenced and locked property or their exit." Doc. 47 at 10 (PAF 3).[2] The Court accepts these assertions as undisputed facts.

---

[2] Officer Acord argues in reply that the Gums failed to provide any evidence to support their contentions in PAFs 2 and 3. Doc. 52 at 5. Mr. Gum, however, filed an affidavit that supports PAF 2. Doc. 47-1 at ¶ 6 ("I had to open my locked gate for Officer Acord and Morales to let them exit my property."). Regarding PAF 3, the record supports the assertion. The lapel videos Officer Acord provided in support of his motion for summary judgment do not capture Officer

Having established which facts are undisputed, the Court turns to an analysis of the disputed facts. Officer Acord claims that the gate surrounding the Gums' property was "partially ajar" such that he and his partner were able "to move the gate aside enough to enter the property . . . ." UMF 3. In contrast, the Gums contend that the gate "was not partially open on January 11, 2025." PAF 1. Further, apparently based on their contentions that the gate was not partially open and that they had to let Officer Acord out of their property by opening the gate, the Gums argue that Officer Acord "climbed over" the locked fence to enter the Gums' curtilage. Doc. 47 at 9-11.

In addition to the undisputed facts the parties present, the Court relies on the portion of the video where Mr. Gum and Officer Acord discuss how the officers entered his property. After Officer Acord informed Mr. Gum that they had entered the property by squeezing through a gap in the gate, Mr. Gum explained that he just wanted to make sure he had everything closed because of the dogs. Def's Ex. B at 1:41-1:59.

In deciding what factual backdrop to use for its analysis, the Court must draw all inferences in favor of the Gums, who are the nonmoving party. As the Gums point out, the video exhibits (body cam footage) do not depict the officers' entry or exit through the gate or other gap in the fence. The video, therefore, does not establish how the officers entered or exited the property or depict, if the officers squeezed through a gap in the gate, the size of any gap they squeezed through. Drawing all reasonable inferences in favor of the Gums, however, the Court concludes that any gap in the gate was too small to be considered a normal entry and egress point.

---

Acord's entry into or exit from the Gums property, which the parties agree was fenced and locked.

First, it appears that any gap in the gate was not large enough for a person to enter without moving the gate. *See* Doc. 42-1 ¶ 6 (sworn statement by Officer Acord stating: "The gate was partially ajar, and Officer Morales and I were able to move the gate aside sufficiently to enter the property."). Second, even after moving the gate to widen the gap, when Mr. Gum asked how the Officers were able to enter his property, Officer Acord replied that they "just kind of squeezed through" the gap in the gate. Def's Ex. B at 1:43-1:48. Drawing all inferences in Plaintiffs' favor, a gap in a gate that, even after widening by force, is only large enough to squeeze through cannot be considered a normal entry and egress point. Third, after Mr. Gum expressed concern about "other dogs," neither Officer Morales nor Officer Acord informed Mr. Gum that there was indeed a gap big enough for a dog to get through. Finally, after Officers Morales and Acord initially walked away from the house to presumably exit the yard the same way they entered it, Mr. Gum had to open his locked gate to let Officers Acord and Morales exit his property. PAF ¶ 6. That Officers Acord and Morales would not simply exit the property the same way they entered it indicates that squeezing through the gap in the gate was difficult enough to justify having Mr. Gum leave his house, walk to the gate, and open the gate for Officers Acord and Morales.[3]

---

[3] Although the Court must draw all reasonable inferences in favor of the non-moving party, the Court's inferences must be based on evidence. Although the Gums present evidence that Mr. Gum unlocked the gate to let out Officers Acord and Morales, Mr. Gum did not present evidence that the Officers did not squeeze through a gap in the that the way the officers described. He averred that the gate was "never ajar," Doc. 47-1 ¶ 5, but a gate does not have to be "ajar" in order to leave a gap between it and a fence. Nor does Mr. Gum have any evidence that anyone saw the officers climb over his fence. Because the Gums present no evidence that the officers climbed over their fence rather than squeezed through a gap in the gate, the Court does not infer that the officers entered the property by climbing rather than squeezing.

**DISCUSSION**

**I.      Whether Officer Acord Violated the Gum's Constitutional Rights**

Officer Acord argues that, when he entered the Gums' property, he was conducting a voluntary knock-and-talk, as any member of the public might do. Doc. 42 at 16. Because he had an implied license to enter the curtilage of the Gums' property and knock on their door, he argues his actions did not violate the Fourth Amendment. Doc. 42 at 16-20.[4]

The Tenth Circuit has held that "police officers do not violate the Fourth Amendment by going to the front door of a home and knocking, seeking to speak with the occupants. Specifically addressing an investigative knock-and-talk—during which police officers knock on the door of a home seeking to speak with the occupants—this court has held that, as commonly understood, a 'knock and talk' is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion." *United States v. Carloss*, 818 F.3d 988, 992 (10th Cir. 2016) (cleaned up). That is, the "portion of the curtilage that is the normal route of access for anyone visiting the premises is only a semi-private area on which police may set foot if they restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches)." *United States v. Shuck*, 713 F.3d 563, 567 (10th Cir. 2013) (cleaned up). As the Supreme Court has recognized, a homeowner provides "an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds. This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Florida v. Jardines*, 569 U.S. 1, 8 (2013) (internal quotation marks and citations omitted). "Complying

---

[4] Officer Acord assumes for purposes of his motion that he entered the curtilage of the Gums' property when he passed through the Gums' gate. Doc. 42 at 19. As such, case law involving entry onto open fields, rather than entry onto curtilage, is inapplicable.

with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters." *Id.*

In *Jardines*, the Supreme Court considered whether a police officer's actions of using a drug detection dog once he entered a property's curtilage exceeded the scope of the homeowner's implied invitation and therefore violated the Fourth Amendment (it did). *Id*. at 8-9. The Gums, however, do not challenge what Officer Acord did once he entered the curtilage of their property. Instead, they argue that because the property Officer Acord entered was "fenced and locked", Officer Acord's act of entering the property was not "objectively reasonable" and therefore violated the Fourth Amendment. Doc. 47 at 13.

In essence, the Gums argue that, by surrounding their property with a locked fence, the Gums revoked any implied license that might have otherwise existed for a person to enter their property and knock on their front door. In *United States v. Carloss*, the Tenth Circuit considered whether various no trespassing signs were sufficient to revoke the implied license to enter a homeowner's property and knock on the front door. 818 F.3d 988, 994-95 (10th Cir. 2016). Specifically,

> there was a "No Trespassing" sign on an approximately three-foot-high wooden post located beside the driveway, on the side farthest from the house, and another sign tacked to a tree in the side yard, both stating "Private Property No Trespassing." There was a sign, on a wooden pole in the front yard along the side of the driveway closest to the house, and a sign on the front door of the house, both stating "Posted Private Property Hunting, Fishing, Trapping or Trespassing for Any Purpose Is Strictly Forbidden Violators Will Be Prosecuted."

*Id*. at 990 (citation omitted). The Tenth Circuit first considered whether the various no-trespassing signs were posted on the property's curtilage or, instead, on an area of the property that could be considered open fields. *Id.* at 995-96. This matters because the Fourth Amendment's protections do not apply to entry onto open fields. *Id.*; *see also Jardines*, 569 U.S. at 6. Because it was the plaintiff's "burden to establish what was included in the home's

13

curtilage" and the plaintiff there failed to expressly claim that the signs were posted in the home's curtilage, the Tenth Circuit considered all no-trespassing signs, save the one posted on the front door, to have been posted in open fields. *Carloss*, 818 F.3d at 995. Having done so, the Tenth Circuit concluded: "Those signs would not have conveyed to an objective officer, or member of the public, that he could not walk up to the porch and knock on the front door and attempt to contact the occupants. It is well-established that 'No Trespassing' signs will not prevent an officer from entering privately owned 'open fields.'" *Id*.

The Tenth Circuit then turned to the sign on the door which said: "Posted Private Property Hunting, Fishing, Trapping or Trespassing for Any Purpose Is Strictly Forbidden Violators Will Be Prosecuted." *Id.* at 996. This sign, the Tenth Circuit reasoned, was ambiguous as it "referenced activities that ordinarily do not take place within a home or its curtilage—hunting, fishing, and trapping." *Id*. Thus, the Tenth Circuit reasoned, "on its face, this sign does not appear to be directed to people who desire to approach and speak directly with the occupants of the home in the ordinary course of societally accepted discourse." *Id*. Knocking on a door to talk with the homeowner is not hunting, fishing or trapping and, as set forth above, walking up to a person's front door is not trespassing because an implied license to do so exists. *See id.* at 996-97.

The first part of *Carloss* has little application to the present case. Officer Acord makes no open-fields argument and so the analysis of the open-fields doctrine is inapplicable. The second part of the *Carloss* analysis, while factually distinct, does at least provide guidance as to how clear a revocation of an implied license must be. *Carloss* stands for the proposition that, to be legally cognizable, a homeowner's revocation of a general implied license to enter the home's curtilage and knock on the door cannot be ambiguous.

14

Further surveying Tenth Circuit case law, Officer Acord cites *United States v. Otero*, 231 F. App'x 809 (10th Cir. 2007), for the proposition that officers may legally enter a property's curtilage through an unlocked gate. Doc. 42 at 17. Although the Tenth Circuit in *Otero* provided little analysis, the Court agrees with Officer Acord that an unlocked gate does not send a clear message to all girl-scouts, package deliverers, trick-or-treaters, or police officers that they have no license to pass the gate and approach the front door. The presence of a fence with an unlocked gate could simply mean that the homeowners wish to keep their dogs in rather than visitors out. A locked gate, however, sends a different message. *Otero*, therefore, does little to advance Officer Acord's argument.

Not finding a Tenth Circuit case with similar facts, the Court turns to a decision from the District of New Mexico. In *Nidiffer v. Lovato*, the Honorable Martha Vázquez adopted United States Magistrate Judge Jennifer M. Rozzoni's recommendation to find that a police officer violated the Fourth Amendment when he jumped over a locked gate to initiate a knock and talk. No. 22cv374 MV/JMR, 2024 WL 1172787, at *3 (D.N.M. Mar. 19, 2024). In her Proposed Findings and Recommended Disposition, Judge Rozzoni concluded that the locked gate separating the officers and the front door they wanted to reach "would have signaled to a reasonable observer that they did not have an implied license to approach the home's front door." 2023 WL 5337129, at *7 (D.N.M. Aug. 18, 2023) (collecting district court opinions in support). As Judge Rozzoni further observed, "Surely, the 'Nation's Girl Scouts and trick-or-treaters' would not see a stranger's locked fence as an invitation to climb over it to approach the door." *Id.*

In the present case, drawing all reasonable inferences in the Gums' favor, their curtilage was surrounded by a fence and locked gate. The locked gate had a small gap through which, if

15

forced farther open, a person could squeeze through. The Court concludes Girl Scouts, tricker-treaters, and delivery persons presented with such a locked gate at night would conclude that any implied license they otherwise might have had to approach the front door was revoked. Similarly, such a locked gate was sufficient to revoke any implied license Officer Acord had to perform a knock-and-talk. By squeezing through the gate, Officer Acord violated the Gums' Fourth Amendment rights.

### a. Whether The Law Was Clearly Established

Ultimately, however, the Gums' claim meets the same fate as the plaintiffs' claim in *Nidiffer*. Although Judge Rozzoni and Judge Vázquez concluded that the officers in *Nidiffer* had no implied license to climb over the gate to reach a homeowner's front door, they also concluded that no clearly established law existed to put the officers on notice that their conduct would be unconstitutional. 2023 WL 5337129, at *8; 2024 WL 1172787, at *3.

On appeal, the Tenth Circuit affirmed in an unpublished decision. No. 24-2056, 2025 WL 719814 (10th Cir. Mar. 6, 2025). The Tenth Circuit recognized that both judges below concluded that the officers violated the homeowners' constitutional rights when they entered the curtilage of their home. *Id*. at *2. But the Tenth Circuit did not review this conclusion. Instead, the Tenth Circuit held, "the district court did not err in concluding the law was not clearly established when the Officers acted, and on that basis, granting qualified immunity to the Officers." *Id*. at *3. In so holding, the Tenth Circuit observed that it is "the Owners' burden to show the law was clearly established" and that "'[t]o show the law is clearly established, a plaintiff must normally point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts.'" *Id*. (quoting *Jordan v. Jenkins*, 73 F.4th 1162, 1168 (10th Cir. 2023). And, "an unpublished decision cannot clearly establish the law." (quoting *Thompson v. Ragland*, 23 F.4th 1252, 1260 n.3 (10th Cir. 2022)). Because the plaintiffs in *Nidiffer* failed to meet their

burden to cite clearly established law sufficient to notify the officers that their conduct was unconstitutional, the officers were protected by qualified immunity.

So too here. Consider the cases on which the Gums rely. The Gums argue: "the U.S. Supreme Court had decided all the issues present in this case in Katz v. United States, 389 U.S. 347, Florida v. Jardines, 569 U.S. 1, and United States v. Jones, 615 F. 3d 544[5]." Doc. 47 at 15. Neither *Katz* nor *Jones*, however, dealt with knock-and-talks.

Instead, *Katz* dealt with the use of an electronic surveillance device to intercept telephone calls made from a public telephone booth. *See Katz v. United States*, 389 U.S. 347, 348-49 (1967). Although visual observance of the presence of a person in the public booth was constitutional, spying on the content of the phone calls with electronic surveillance required a warrant. *Id.* at 352-53. *Katz* is widely cited for the reasonable-expectation-of-privacy test it articulated and which has become a core inquiry in Fourth Amendment cases. *See e.g., Jardines*, 569 U.S. at 10-11. As the Supreme Court recognized in *Jardines*, however, "[t]he *Katz* reasonable-expectations test 'has been *added to*, not *substituted for*,' the traditional property-based understanding of the Fourth Amendment, and so is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas. Thus, we need not decide whether the officers' investigation of Jardines' home violated his expectation of privacy under *Katz*." *Jardines*, 569 U.S.at 11.

Granted, to the extent the Gums argue that they had a reasonable expectation of privacy in the curtilage of their home, they fairly cite *Katz*. But the question here is not whether a home's curtilage enjoys protection of the Fourth Amendment. The Supreme Court has long recognized

---

[5] Plaintiffs cite the circuit court's decision in *United States v. Jones*, 565 U.S. 400 (D.C. Cir. 2010), which was affirmed by the Supreme Court, 565 U.S. 400 (2012). The Court analyzes the Supreme Court's decision, which is the relevant governing precedent.

17

that it does. *Jardines*, 569 U.S. at 6 ("when it comes to the Fourth Amendment, the home is first among equals" and the Supreme Court "regard[s] the area immediately surrounding and associated with the home—what our cases call the curtilage—as part of the home itself for Fourth Amendment purposes" (internal quotation marks omitted)). Instead, the question here is whether a fence and locked gate surrounding curtilage is sufficient to revoke the implied license to cross the curtilage en route to the door of the home. *Katz* does not speak to that question and falls far short of providing Officer Acord notice that his actions here were unconstitutional.

United States v. Jones also fails to provide such notice for similar reasons. In *Jones*, the Supreme Court held that the use of a GPS device to track a vehicle for a month constituted a search and required a warrant. 565 U.S. 400, 404 (2012). As relevant here, the Supreme Court in *Jones* recognized that violating a person's reasonable expectation of privacy is not the only means of violating a person's Fourth Amendment rights. As this Court has previously explained:

> [In *Jones*, t]he Supreme Court agreed that a person's reasonable expectation of privacy is a relevant consideration. [565 U.S. 400,] 406-11. But, the Supreme Court held, it is not the only consideration. *Id.* In deciding whether a Fourth Amendment violation occurred, the Supreme Court explained it first looks to whether the agent's installation of the tracking device constitutes a trespass. *Id.* If the answer to this question is "yes," a Fourth Amendment violation occurs, suppression of the location information is necessary, and consideration of whether the government also violated the suspect's reasonable expectation of privacy is unnecessary. *Id.*

*In re Search Warrant Application for Location Info.*, 754 F. Supp. 3d 1099, 1131 (D.N.M. 2024). That is, in addition to the reasonable-expectation-of-privacy test the Supreme Court recognized in *Katz*, *Jones* recognizes another avenue for a Fourth Amendment violation—trespass. Because there is an implied license to walk up to a homeowner's front door and knock on the door, however, doing so does not constitute a trespass. And, although a person's actions while on the home's curtilage can exceed the scope of this implied license (as did the police officer's actions in *Jardines*), *Jones*, a case that had nothing to do with curtilage or an implied

18

license to knock-and-talk, in no way reduced the scope of an implied license to knock-and-talk. *See Jardines*, 569 U.S. at 10-11. The Gums' citation to *Jones* falls far short of providing clearly established law that Officer Acord's actions were unconstitutional. *Jones* simply did not address whether a fence and locked gate surrounding curtilage is sufficient to revoke an implied license to knock-and-talk.

Finally, consider Plaintiffs' third citation: *Florida v. Jardines*. The Supreme Court in *Jardines* did discuss consensual knock-and-talk encounters. But it did so in order to expressly recognize their constitutionality. 569 U.S. 1, 8 (2013). And although *Jardines* holds that "introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence" exceeds the implied license to conduct a knock-and-talk, *id.* at 9, it says nothing about whether a fence and locked gate surrounding curtilage is sufficient to revoke the implied license to conduct a knock-and-talk.

In short, neither *Katz*, *Jones*, nor *Jardines* discusses gaps in a locked gate. As such, the Court rejects the Gums' attempt to define the right at issue at a high level of generality. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("We have repeatedly told courts not to define clearly established law at a high level of generality." (cleaned up)). The Gums cite no case specific enough to defeat qualified immunity with respect to the narrow question presented in this case.

Because it is a plaintiff's burden to defeat qualified immunity, the lack of a cited case on point is sufficient to grant summary judgment in the defendant's favor. *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015); *Quinn v. Young*, 780 F.3d 998, 1013 (10th Cir. 2015) ("the *plaintiff* bears the burden of citing to us what he thinks constitutes clearly established law"). In the alternative, a court may, sua sponte and despite a plaintiff's waiver, survey whether the clearly established law would have put a reasonable officer on notice his conduct was unconstitutional.

*Cox*, 800 F.3d at 1247. But the Court is not aware of any published Tenth Circuit or Supreme Court precedent which addresses the act of squeezing through a gap in a locked gate.

The Tenth Circuit in *United States v. Shuck* did address where an officer might walk en route to knocking on the door of a residence. 713 F.3d at 568 ("the normal route of access, which would be used by anyone visiting this [home]" defines the constitutional boundaries of the path an officer may use to initiate a knock and talk). *Shuck*, however, did not address whether an officer who squeezes through a gap in a gate en route to a residence's front door exceeds the bounds of his implied license to perform a knock-and-talk. Nor is the Court aware of published Tenth Circuit precedent, Supreme Court precedent, or other clearly established law that would put a police officer on clear notice that squeezing through a gap in a gate is not the normal route of access which would be used by anyone visiting a home that is surrounded by a fence and locked gate. Further, in the absence of clear guidance to the contrary, an officer reading the unpublished Tenth Circuit's decision in *Otero* (where the Tenth Circuit concluded that passing through an unlocked gate of a fenced property did not violate the Fourth Amendment) may not have clear notice that squeezing through a locked gate would lead to a different result.

As noted above, the present case is similar to *Nidiffer v. Lovato*, where Judge Vázquez held that an officer jumping over a locked gate to initiate a knock and talk is unconstitutional, but that the law was not clearly established to prohibit it. 2024 WL 1172787, at *3. *Nidiffer*, of course, cannot clearly establish the law, as it did not result in a published Tenth Circuit opinion and, even if the Tenth Circuit published its opinion, it did not address the constitutionality of the police officers' actions in that case. Like Judge Vázquez in *Nidiffer*, the Court finds that even though the defendant officer's actions violated the Fourth Amendment, the lack of clearly

established law to notify the officer that his conduct would be unconstitutional means the officer is entitled to the protection of qualified immunity.

## CONCLUSION

The Court GRANTS Joseph Acord's Motion For Summary Judgment For Claims Brought By Dana And Jerry Gum On The Basis Of Qualified Immunity, Doc. 42, and grants summary judgment in Defendant Acord's favor on all claims brought by Plaintiffs Dana and Jerry Gum.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

21